## FOURNIER v. UNITED STATES.
### No. 4644.

Circuit Court of Appeals, Seventh Circuit.
April 16, 1932.

John Elliott Byrne and Gerald T. Wiley, both of Chicago, Ill., for appellant.

George E. Q. Johnson, U. S. Atty., and Joseph A. Struett, Asst. U. S. Atty., both of Chicago, Ill.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

EVANS, Circuit Judge.

Appellant was convicted and sentenced to thirty months in the penitentiary for a violation of section 338, title 18, USCA (Criminal Code, § 215); i. e., using the United States mails in furtherance of a scheme to defraud. Assigned errors deal with (a) alleged defects in the indictment, (b) alleged misconduct of the prosecuting attorney, (c) admission of evidence over appellant's objection, and (d) insufficiency of the evidence to support the charge preferred in the indictment.

Consideration of the last-stated error will be first undertaken as it offers an opportunity to state and study the facts.

The record disclosed substantial evidence to this effect: Fournier was a stockbroker who dealt in listed and unlisted stocks. His alleged scheme to defraud was limited to his handling of stock in the Bildwell Construction Company, an unlisted stock, the sale of which was authorized by the Securities Commission of Illinois up to the fall of 1929, at which time the permit to sell it was revoked by that body.

Appellant's method of handling this stock was first to fill an order for a customer for a well-known listed stock, and then to persuade the customer to sell that stock and buy B. C. stock on margin, $1 per share down and the balance ($4) subject to call. Shortly after the sale of the B. C. stock to the customer and the payment of $1 a share was made, a call for additional margin would be made on the customer. If the margin were put up, another call was made. If the call were not met, the stock was almost always sold for

the unpaid price, the purchaser losing his down payments.

The evidence further showed that appellant did not, when he sold the stock to the customer, purchase such stock, nor did he in fact sell the stock when he so reported to his customer. The entire transaction was, so far as he was concerned, a bookkeeping transaction. He received the money from the customer, and, if the latter failed to meet the call, he forfeited the payment. If the purchaser made all payments on the stock, appellant purchased the stock and secured the certificate. The taint of fraud appears from the fact that when appellant sold out the customer for the balance due—say, $4 per share—he would at the same time buy like stock (on his books) for another customer at $5. There were no real sales except when the purchaser paid $5 per share for the stock. All other so-called sales were paper transactions between appellant and customers. All payments made by the customers were taken by the appellant and by him retained. His call for margins, when not met, resulted in his selling out the customer. His selling out the customer was, in fact, merely a closing of the account on his books and his retaining all the money paid down by the customer.

That appellant was well within the prohibition of the statute in devising and working his scheme to defraud, we have no doubt.

A "scheme to defraud" has been defined times without number. See 18 USCA § 338 notes, pages 140, 145. It is well settled that to establish such a scheme, it is not necessary that there should be actual misrepresentation of an existing fact. It is sufficient if the proposed venture be presented in such a way as is calculated to carry out the intent to deceive. McCarthy v. U. S. (C. C. A.) 187 F. 117.

The offense defined by this statute calls for the presence of two essential elements: (a) The existence of a scheme to defraud; and (b) the placing or causing to be placed in the post office of a letter, post card, etc., for the purpose of executing the scheme. In a scheme to defraud the significant fact is the intent and purpose. In Durland v. United States, 161 U. S. 306, 314, 16 S. Ct. 508, 511, 40 L. Ed. 709, it was said: "It was with the purpose of protecting the public against all such intentional efforts to despoil, and to prevent the post office from being used to carry them into effect, that this statute was passed; and it would strip it of value to confine it to such cases as disclose

an actual misrepresentation as to some existing fact, and exclude those in which is only the allurement of a specious and glittering promise."

The gist of the scheme to defraud in the instant case, as alleged in the indictment and proved on the trial, was the pretended selling of unlisted stocks of shady character on margin, the calling on the customer for more margin, and the selling out of the customer, when as a matter of fact there was no stock purchased by appellant at the time he accepted the down payment or subsequent payments on margin from the customer and no sale of the stock when the customer failed to meet the margin call. To effectuate this illegal scheme, the accused first sold a listed stock and, if the customer had a profit, would recommend its sale and the reinvestment in B. C. stock; the amount of the stock sold being such that a margin sale was necessary and the customer could not meet the subsequent calls for margin. The pretended sellout followed, and appellant reaped a profit in a sum equal to the amount the customer had made as down payments on his supposed purchase.

It would perhaps be more accurate to say that the proof bearing upon the charge was sufficient to justify a jury in finding the facts to be as thus described. The appellant did not deny any of the facts brought out by the Government, and the logical inferences deducible therefrom were not materially qualified, explained, or disputed by other witnesses.

In view of what has been said concerning the scheme, it is unnecessary to consider separately the attack upon the indictment. Appellant's counsel has with zeal and ingenuity endeavored to show that the facts charged in the indictment were consistent with the innocence of accused. The opposite conclusion, however, is unavoidable. The facts stated, it seems to us, indicated an evil intent back of an executed scheme to defraud the customers out of their down payments, or margins on fictitious sales which the customers believed, and had reason to believe, were bona fide sales. The stock in the B. C. Company was represented as full of promise, and its early listing on a stock exchange was falsely assured. The facts upon which this charge rests were set forth in the indictment and made it impervious to successful attack.

Appellant also attacks the indictment because of repugnancy, uncertainty, and duplicity. As a basis for this criticism, he points to the fact that the indictment charged

that the scheme to defraud was devised on January 1, 1930, and that the letters sent out in execution of the scheme were mailed in September and October of 1929. Obviously, the indictment set forth the wrong year as the date of the conception of the scheme to defraud.

This error, however, was not fatal. Hume v. U. S. (C. C. A.) 118 F. 689. The validity of an indictment does not ordinarily depend upon the correctness of a date appearing therein, provided the time alleged does not raise the bar of the statute of limitations. Averments of time are usually matters of form and need not be proved as laid. Moreover, it is not the date the scheme was devised that is important. The mailing of the letters in furtherance of the fraudulent scheme is the fact, the proof of which is essential to the completion of the offense. The date of the mailing of the letters starts the running of the statute of limitations. Munch v. U. S. (C. C. A.) 24 F.(2d) 518.

Appellant assigns error in the reception of certain stock book records of the Bildwell Construction Company and compilations made therefrom. The stock books showed the names of all stockholders, the dates when the stock was issued, and the amount of the sales. The objection to the compilation is dependent upon the objection to the reception of the books themselves. The compilation showed the facts appearing in the stock books in a concise and informative manner and as such were receivable provided the books themselves were admissible. Capone v. U. S. (C. C. A.) 51 F.(2d) 609, 76 A. L. R. 1534.

The objection to the stock books was insufficient identification. Their reception was based upon the testimony of one Minnec, the president and general manager of the Bildwell Construction Company. He stated he did not keep the books, nor make the entries; that an employee of the company made them. Without explaining the absence of the bookkeeper, or offering to produce him, and without more perfect showing that the stock record book set forth correctly the sales, and all of them, the books should not have been received in evidence. However, the appellant informed the court that his objection was on another ground. He apparently waived the calling of the bookkeeper. Upon the books' being offered in evidence, the court inquired of appellant's counsel if he had any objection to their admission. Counsel replied: "Yes, I don't think they are qualified, but I wonder if we could suspend until tomorrow morning? I do not suppose you want to start on the cross-examination now. * * * I hardly know what to say about the stock certificate books. I would have no objection to them if I felt that their accuracy was established. However, I feel I should make an objection on the ground that the accuracy of the books has not been sufficiently established."

The court received the books, and counsel excepted, but the cross-examination of the witness was postponed to the next day; and in the meantime appellant's counsel took the stock books to his office, examined the same, and cross-examined the witness in the light of their contents. No subsequent objection was made as to the accuracy of the books.

Under the circumstances, the court was justified in assuming that there was no further objection to the books on account of their alleged inaccuracy. The materiality of the showing of all stock sales, etc., was obvious. The books themselves showed clerical work slovenly performed, but did not suggest inaccuracies either as to dates, amounts, or names of the purchasers of stock certificates. In fact, an examination of the entire record justifies the conclusion that there were no errors in these books in so far as they related to the issues on trial. They showed, of course, that no certificates were issued to appellant's customers who purchased on margins. They also showed that, on all sales where the entire purchase price had been paid, certificates were issued.

We conclude that the receipt of these books did not constitute prejudicial error.

Error is assigned because the court at the request of the government counsel called three witnesses. After they were thus called by the court, counsel for the government, not the court, examined them. We fail to find anything in the record which explains or accounts for the court's calling these three witnesses. Minnec was president of the Bildwell Construction Company. McGraw was a bookkeeper for appellant. Poss was a public accountant under subpoena by the appellant. In the presence of the jury the prosecuting attorney, speaking of McGraw, said: "Now if your Honor please, this man is a bookkeeper for A. Fournier & Company and I am going to ask the Court to call him and not call him as a Government witness. He knows of the transactions as they are, and he knows his version of this story, and I don't want to be bound by his testimony."

In reference to Poss, the witness was called by the Government, and after two questions were put to him, counsel said: "I am

going to ask leave to call this man as the Court's witness. He told me five minutes before two o'clock that he had this statement, and it was in his handwriting. * * * Now, he is under subpœna here for the defense, and I am going to ask for the right to cross-examine him on that statement."

The statements made by counsel did not justify the court's calling the witnesses as its, rather than as government witnesses. Some showing should be made to the court, in the absence of the jury, to justify the court's calling the witnesses as its own. The remark of counsel, too, was unfortunate. However, we are not satisfied that there was prejudicial error. There was nothing in the examination of the witnesses which could not have been brought out on direct examination had the witnesses been examined as government witnesses. In fact, they were so examined, and appellant's counsel cross-examined as though they were government witnesses.

The judgment is affirmed.