**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Patrick J. DOHERTY, Defendant–Appellant, Cross–Appellee.**

Nos. 91–3291, 91–3352.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1992.

Decided July 24, 1992.

---

**5.** The case, 9 Ex. 341, 156 Eng.Rep. 145 (1854), not the screen actor, whose credits include *Be-* *hind the Green Door.*

James L. Santelle (argued), Chris R. Larsen, Asst. U.S. Attys., John E. Fryatt, U.S. Atty., Daniel T. Flaherty, and Charles Guadagnino, Office of the U.S. Atty., Milwaukee, Wis., for the U.S.

Joseph F. Owens (argued), Arthur & Owens, New Berlin, Wis., for Patrick J. Doherty.

Before FLAUM and KANNE, Circuit Judges, and SHABAZ, District Judge.*

FLAUM, Circuit Judge.

In late 1987 Patrick J. Doherty, virtually broke but eager to invest in a stock market depressed by the crash of October 1987, engaged in a "check kiting" scheme to generate some investment capital by artificially inflating his checking account balance. The scheme worked as follows: Doherty maintained two checking accounts, one at the M & I Marshall & Ilsley Bank of Milwaukee, Wisconsin (M & I) and the other at the Suburban State Bank of Hartford, Wisconsin (Suburban). On November 5, he purchased some stock, paying his brokerage house with a $27,123.32 check drawn against his M & I account, which at the time had a balance of no more than a few hundred dollars. To cover the impending overdraft, the following day Doherty deposited in that account a $27,123.32 check drawn against his Suburban account. The Suburban account also held insufficient funds, so Doherty then deposited in that account another $27,123.32 check, this one

---

* The Honorable John C. Shabaz, Western District of Wisconsin, sitting by designation.

drawn against his M & I account. Three days later he deposited in his M & I account a $27,233.00 check drawn against his Suburban account. He kept the kite afloat in like manner for about a month, raising the stakes at times and writing about 40 bad checks in all. Finally, a banking official at Suburban realized what was happening and closed Doherty's account. The brokerage house, realizing the same, liquidated his portfolio. M & I acted last, and was left holding the bag to the tune of $96,721.00.

A federal grand jury subsequently indicted Doherty for bank fraud under 18 U.S.C. § 1344. Doherty filed a motion to dismiss, asserting that the facts alleged in the indictment did not constitute a criminal offense under that provision. The district court denied the motion, *United States v. Doherty*, No. 91–CR–41 (E.D.Wis. June 17, 1991), and Doherty thereafter entered a conditional guilty plea in which he reserved the right to appeal the court's ruling. Fed. R.Crim.P. 11(a)(2). In imposing sentence, the court rejected the government's contention that Doherty's offense involved "more than minimal planning," and hence declined to impose a two-level enhancement under § 2F1.1(b)(2)(A) of the Sentencing Guidelines. Both parties appeal. We affirm Doherty's conviction, vacate his sentence, and remand to the district court for resentencing.

## I.

The indictment returned against Doherty alleged only that he engaged in a check kiting scheme between two federally insured banks by knowingly drafting and depositing a series of overdraft checks. We must determine whether the district court correctly concluded that such a bare check kiting scheme—meaning a check kiting scheme unadorned by any other acts or communications to the drawee bank or banks—constitutes bank fraud under § 1344. This is an issue of law, which we review *de novo*.

The version of § 1344 in effect at all relevant times provides as follows:

Whoever knowingly executes, or attempts to execute, a scheme or artifice

(1) to defraud a financial institution, or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 20 years, or both.

18 U.S.C. § 1344 (West Supp.1990). The statute, which reads in the disjunctive, establishes two distinct, albeit closely related, offenses: (1) schemes to defraud financial institutions; and (2) schemes to obtain money, etc., from financial institutions by false pretenses, representations or promises. *See United States v. Medeles*, 916 F.2d 195, 198 (5th Cir.1990); *United States v. Bonnett*, 877 F.2d 1450, 1453–54 (10th Cir. 1989).

The government concedes that Doherty did not violate § 1344(2), a wise concession given *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982). That case held that check kiting is not an offense under another federal bank fraud statute, § 1014, which prohibits the making of "any false *statement or report* ... for the purpose of influencing in any way the action of" certain enumerated financial institutions. 18 U.S.C. § 1014 (1982) (amended 1989, 1990) (emphasis supplied). The government in *Williams* had argued that the defendant's drafting and deposit of an overdraft check was a "false statement" because it impliedly represented that the check was covered by sufficient funds in the defendant's checking account. The Court disagreed, reasoning that the defendant's action was not a "false statement" because a check "is not a factual statement at all," but rather an order to the drawee bank to pay a sum certain to the holder. *Id.* at 284, 102 S.Ct. at 3091. In other words, a check does not "make any representation as to the state of [an account holder's] bank balance," and hence cannot be characterized as true or false. *Id.* at 284–85, 102 S.Ct. at 3091–92.

Section 1344(2), which covers schemes accomplished "by means of false or fraudulent pretenses, representations, or promises," is akin to § 1014, which covers "false statement[s] or report[s]," in that both reach only those acts that involve some misrepresentation or false assertion of fact. *Cf. United States v. Kucik*, 844 F.2d 493, 500 (7th Cir.1988) ("false statements" under § 1014 most likely indistinguishable from "false pretenses" under 18 U.S.C. § 2113(b)). Consequently, *Williams'* holding that a bare check kiting scheme cannot offend § 1014 because it does not state or assert anything applies with equal force to § 1344(2). *See United States v. Falcone*, 934 F.2d 1528, 1540–41 (11th Cir.) (dicta) *vacated on other grounds, reh'g en banc granted*, 939 F.2d 1455 (1991), *reinstated in relevant part*, 960 F.2d 988 (1992) (en banc); *Medeles*, 916 F.2d at 201; *cf. Kucik*, 844 F.2d at 500 (check kiting does not constitute theft by false pretenses under 18 U.S.C. § 2113(b)); *United States v. Cronic*, 900 F.2d 1511, 1516 (10th Cir.1990) (check kiting scheme does not violate "false representations" clause of mail fraud statute, 18 U.S.C. § 1341); *United States v. Frankel*, 721 F.2d 917, 919 (3d Cir.1983) (same). We agree with the parties that the allegations in Doherty's indictment cannot constitute an offense under § 1344(2).

■■■ If § 1344 prohibits bare check kiting, then, it can do so only under § 1344(1), which prohibits "scheme[s] or artifice[s] to defraud .... financial institution[s]." Five Circuits have expressly addressed this issue, and all have ruled that check kiting schemes involving two or more financial institutions fall within the scope of § 1344(1). *United States v. Stone*, 954 F.2d 1187, 1189–91 (6th Cir.1992); *United States v. Fontana*, 948 F.2d 796, 802 (1st Cir.1991); *United States v. Celesia*, 945 F.2d 756, 758–59 (4th Cir.1991); *United States v. Schwartz*, 899 F.2d 243, 246–47 (3d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 259, 112 L.Ed.2d 217 (1990); *Bonnett*, 877 F.2d at 1454–56. The District of Columbia, Eleventh and Fifth Circuits have noted their agreement in dicta. *United States v. Sayan*, 968 F.2d 55, 61 n. 7 (D.C.Cir.1992); *Falcone*, 934 F.2d at 1541

n. 30; *Medeles*, 916 F.2d at 201. The question remains open in this Circuit. *United States v. Taggatz*, 831 F.2d 1355 (7th Cir. 1987), affirmed the conviction of a' check kiter under § 1344, but did not reach the issue raised by Doherty herein. We once mentioned in passing that § 1344 probably prohibits bare check kiting, *Kucik*, 844 F.2d at 499–500, but language in passing does not establish the law of the Circuit. *United States v. House*, 808 F.2d 508, 511 (7th Cir.1986).

In finally determining for ourselves the scope of § 1344(1), we see no reason to disturb the consensus. We look first to the language of the statute, *Hughey v. United States*, 495 U.S. 411, 415,, 110 S.Ct. 1979, 1982, 109 L.Ed.2d 408 (1990), and assume that its plain meaning "accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985). The plain meaning of "scheme" is a "design or plan formed to accomplish some purpose," Black's Law Dictionary 1344 (6th ed. 1990), or "a plan, design, or program of action to be followed." The Random House College Dictionary 1177 (rev. ed. 1980). To "defraud" means "[t]o practice fraud," "to cheat or trick," Black's, *supra*, at 483, or "to deprive of a right or property by fraud," Random House, *supra*, at 349; "fraud" means "deceit, trickery, or breach of confidence, used to gain some unfair or dishonest advantage." *Id.* at 526. Check kiting, at root, is a plan designed to separate the bank from its money by tricking it into inflating bank balances and honoring checks drawn against accounts with insufficient funds. *See Williams*, ͵458 U.S. at 281 n. 1, 102 S.Ct. at 3089 n. 1 (explaining mechanics and object of check kiting). It certainly is encompassed within the ordinary meaning of the term "scheme to defraud."

Doherty does not address the plain meaning of § 1344(1)—nor; for that matter, does the government—but contends nonetheless that one cannot execute a scheme to defraud without making a false statement or

misrepresentation of fact. In support, Doherty points to the Seventh Circuit's pattern jury instructions for mail and wire fraud prosecutions under 18 U.S.C. §§ 1341 and 1343, respectively; these instructions define "scheme to defraud" as "some plan or course of action intended to deceive another and to deprive another of something of value by means of *false pretenses, representations, or promises.*" II *Federal Criminal Jury Instructions (Seventh Circuit)*, ch. 63, at 90 (1983) (emphasis supplied). Because Congress patterned § 1344 after §§ 1341 and 1343, Doherty argues, a false representation or promise is the *sine qua non* of a "scheme to defraud" under § 1344(1); accordingly, under · *Williams,* check kiting is no more a crime under § 1344(1) than it is under § 1344(2).

■ We agree with Doherty that "scheme to defraud" means the same thing under §§ 1341, 1343 and 1344, but our agreement ends there, for we are not persuaded that the term has as cramped a meaning as he contends. Granted, the Seventh Circuit's pattern jury instructions support a restrictive interpretation. However, those instructions, while carrying some weight, were never intended to have the force of law in this Circuit. *See* II *Federal Criminal Jury Instructions, supra,* at v (letter from Judicial Council of the Seventh Circuit) ("we cannot and do not approve in advance the instructions ... in any particular case"). Indeed, we have explicitly recognized—both before and after publication of those instructions—that a course of conduct not involving any factual misrepresentation can be prosecuted as a "scheme to defraud" under the mail and wire fraud statutes. *See, e.g., United States v. Richman,* 944 F.2d 323, 332 & n. 10 (7th Cir. 1991); *Fournier v. United States,* 58 F.2d 3, 5 (7th Cir.), *cert. denied,* 286 U.S. 565, 52 S.Ct. 647, 76 L.Ed. 1297 (1932).

■ This should come as no surprise. As its ordinary meaning suggests, the term "scheme to defraud" describes a broad range of conduct, some which involve false statements or misrepresentations of fact, *see, e.g., United States v. Church,* 888 F.2d 20, 23 (5th Cir.1989), and others which do

not. *See, e.g., Cronic,* 900 F.2d at 1513–14. This was commonly understood in 1984 when Congress enacted § 1344. *See, e.g., United States v. Halbert,* 640 F.2d 1000, 1007 (9th Cir.1981); *United States v. Bruce,* 488 F.2d 1224, 1229 (5th Cir.1973), *cert. denied,* 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 (1974); *Fournier,* 58 F.2d at 5; *Kaufmann v. United States,* 282 F. 776, 779 (3d Cir.), *cert. denied,* 260 U.S. 735, 43 S.Ct. 96, 67 L.Ed. 488 (1922). In construing § 1344(1), we must presume that Congress was aware of the settled judicial interpretation of "scheme to defraud" under §§ 1341 and 1343, and that it intended to incorporate that interpretation when enacting § 1344. *Moskal v. United States,* — U.S. ——, 111 S.Ct. 461, 468, 112 L.Ed.2d 449 (1991); *Cannon v. University of Chicago,* 441 U.S. 677, 696–98, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979); *see also* Felix Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum.L.Rev. 527, 537 (1947) (when a term is "transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it"). The aforementioned pattern jury instructions notwithstanding, one need not make a false representation to execute a scheme to defraud. Accordingly, we conclude that the language of § 1344(1) unambiguously encompasses bare check kiting schemes.

■ When the language of a statute is lucid, we examine the legislative history only to see whether it reflects "a clearly expressed legislative intention to the contrary." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The legislative materials surrounding the passage of § 1344(1) confirm, rather than refute, our conclusion regarding its scope, for they clearly evince Congress' desire to enact a federal check kiting statute in the wake of *Williams. See* S.Rep. No. 225, 98th Cong., 1st Sess. 377–78 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3517–19; *Bonnett,* 877 F.2d at 1454; John F. Wagner, Jr., Annotation, *What Constitutes Violation of Federal Bank Fraud Statute (18 U.S.C. § 1344),* 99 A.L.R. Fed. 888,

891–92 (1990). We therefore join the First, Third, Fourth, Sixth and Tenth Circuits in holding that the government may prosecute bare check kiting schemes under § 1344(1).

Doherty's raises an additional argument regarding the sufficiency of the facts alleged in the indictment, but it merits no separate discussion.

### II.

■ At sentencing, the district court declined to adopt the presentence report's recommendation to enhance Doherty's sentence by two levels for "more than minimal planning." *See* U.S.S.G. § 2F1.1(b)(2)(A), cross-referencing § 1B1.1, application note 1(f) (definition). The government appeals this decision, which we review for clear error. *United States v. Lennick,* 917 F.2d 974, 979 (7th Cir.1990); *United States v. White,* 903 F.2d 457, 466 (7th Cir.1990).

Doherty's check kiting scheme spanned approximately one month, and during that time he wrote approximately 40 checks—none supported by sufficient funds—to keep the kite afloat. In ruling that these activities did not involve "more than minimal planning," the district court reasoned as follows:

> As to more than minimal planning, implicit in this type of an offense in my view is planning.... And although it's a close question I think that more would have been necessary here to have been done to go on top of the adjusted range to apply two more points for planning. All of the acts here were part and parcel of committing bank fraud. And there isn't anything here that is unusual in my view that would qualify for a further enhancement.

Sentencing Tr. at 44. We believe that the court's analysis did not properly apply the Guidelines.

The Guidelines identify three types of situations that warrant a "more than minimal planning" enhancement. U.S.S.G. § 1B1.1, application note 1(f); *United States v. Maciaga,* 965 F.2d 404, 406 (7th Cir.1992). The district court focused on only one, crimes that involve "more plan-

ning than is typical for commission of the offense in a simple form," and determined that Doherty's activities did not involve more planning than would a typical check kiting or bank fraud scheme. While one could certainly have concluded otherwise as an original matter, we defer to the district court's finding on this issue. *See United States v. Mount,* 966 F.2d 262, 265–266 (7th Cir.1992). The Guidelines, however, also direct district courts to impose the enhancement if the offender's crime involved "repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. § 1B1.1, application note 1(f); *Maciaga,* at 407–08. Drafting 40 overdraft checks during a single month, few if any of which appear to have been purely opportune, arguably fits this profile. The district court committed clear error by declining to consider the applicability of this prong of the "more than minimal planning" enhancement. We vacate Doherty's sentence and remand for resentencing to give the court an opportunity to do so.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.