19 F.3d 30
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
George V. HANSEN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
John F. SCORESBY, Defendant-Appellant.
 Nos. 93-30142, 93-30156.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 1, 1994.
Decided Feb. 18, 1994.
 
 Before: GOODWIN, SCHROEDER, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 George V. Hansen and John F. Scoresby appeal their convictions for knowingly executing a scheme to defraud five federally-insured financial institutions, pursuant to 18 U.S.C. Sec. 1344(1). We affirm.
 
 
 3
 In the late 1980s, former Idaho Congressman George V. Hansen began soliciting loans from various individuals, purportedly to fund certain political projects promoted by him. John F. Scoresby worked for Hansen in an administerial capacity from 1985 until October 31, 1991, at which time George Hansen filed bankruptcy.
 
 
 4
 Hansen paid interest on these loans at the rate of ten to twenty percent per month, and paid "finder's fees" of five to ten percent to persons able to locate individuals interested in lending money to Hansen. Scoresby personally received checks from the individuals providing the loans, deposited the loan proceeds into a checking account at the Bank of Commerce in Idaho Falls known as the "Ideal Consultants" account, and reimbursed individual lenders by issuing them checks drawn on the same account.
 
 
 5
 In March 1990, Hansen asked Brad Neibaur, an acquaintance who had previously lent Hansen money, whether he would be interested in exchanging checks. Hansen requested that Neibaur prepare several checks in amounts in excess of $100,000, and agreed to pay Neibaur a $1,000 fee for each check exchanged. Neibaur wrote the checks despite the fact that, due to expenses associated with his farm, he had insufficient funds in his account to pay such large obligations. Neibaur drew these checks on his accounts at four different federally-insured financial institutions: the D.L. Evans Bank, First Security Bank of Idaho, Key Bank of Idaho, and First Interstate Bank.
 
 
 6
 In return, Scoresby wrote checks payable to Neibaur for the same amounts, plus the $1,000 fee. Scoresby would deposit Neibaur's check into the Ideal Consultants account, then Hansen would instruct Neibaur to deposit the corresponding check drawn on the Ideal Consultants account. In this manner Hansen and Scoresby were able to benefit from the falsely inflated balance of the Ideal Consultants account. In May 1990, Scoresby began to deposit more than one of the Neibaur checks on the same day at different branches of the Bank of Commerce in Idaho Falls.
 
 
 7
 Between March and October 1990, Hansen and Scoresby exchanged approximately 212 checks with Neibaur totalling $22,792,800. Evidence at trial also established that Hansen and Scoresby had similar arrangements with other individuals, including one Raymond Burns. Between March and November 1990, the appellants exchanged approximately 109 checks with Burns totalling $8,300,000. Although the Bank of Commerce had a policy of honoring overdrafts made by valued customers, Richard N. Adams, the bank's chief executive officer, testified that the bank had no knowledge that Hansen and Scoresby were exchanging insufficient funds checks with Neibaur and Burns.
 
 
 8
 In October 1990, the D.L. Evans Bank decided to close Brad Neibaur's account because of suspected check kiting with Ideal Consultants. Although D.L. Evans notified Bank of Commerce officials of its decision, the Bank of Commerce did not take any action because the history of the Ideal Consultants account had been good. Hansen declared bankruptcy on October 31, 1990, after advising Neibaur and Burns to stop payment on their checks that had been deposited in the Ideal Consultants account. As a result, the account was overdrawn in excess of $2.1 million.
 
 
 9
 On September 18, 1992, a superseding indictment was returned against Hansen and Scoresby on 49 counts of bank fraud under 18 U.S.C. Sec. 1344(1), and of aiding and abetting under 18 U.S.C. Sec. 2. Hansen and Scoresby were found guilty of 45 of the 49 counts of bank fraud following a ten-day jury trial.
 
 I. Sufficiency of the Evidence
 
 10
 Hansen and Scoresby first argue that the evidence was insufficient to sustain the jury verdicts. The appellants focus on the requirement under 18 U.S.C. Sec. 1344(1) that there be a specific intent to defraud. See, e.g., United States v. Mason, 902 F.2d 1434, 1442 (9th Cir.1990). Both argue that, because the banks involved knew what was going on, and in effect condoned the appellants' actions, the banks were not deceived. The appellants then argue that, if there was no deception, there could have been no specific intent to defraud.
 
 
 11
 There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992).
 
 
 12
 We have held that specific intent under 18 U.S.C. Sec. 1344 is established by "the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension, and this intention is shown by examining the scheme itself." United States v. Mason, 902 F.2d at 1442 (citations and internal quotations omitted). Furthermore, intent to defraud may be established by circumstantial evidence. Id. at 1443.
 
 
 13
 In United States v. Celesia, 945 F.2d 756, 759 (4th Cir.1991), the defendants appealed their convictions under 18 U.S.C. Sec. 1344(1), arguing that there was insufficient evidence to support their convictions. Similar to the present case, the defendants claimed that they lacked intent to defraud and that they were merely relying on their bank's past practice of honoring drafts on uncollected funds, in effect granting them "informal loans." Id. at 759. The Fourth Circuit rejected that argument, finding that
 
 
 14
 [s]ignificant evidence exists to negate Appellants' claim of lack of fraudulent intent. The manner in which Appellants made the deposit of the six worthless Dean Witter checks to the ISB Signet account--in three locations at three different times on the same afternoon--is telling. Upon questioning, neither [of the defendants] could offer a legitimate explanation for this conduct to counter the reasonable inference that they were trying to avoid arousing ISB's verification mechanism....
 
 
 15
 Id. at 760. Similarly, the evidence here showed that Scoresby deposited several of the Neibaur checks into the Ideal Consultants account on the same day at different branches of the Bank of Commerce in Idaho Falls. Scoresby's explanation for the irregular manner in which he deposited the Neibaur checks--that he was trying to avoid arousing local gossip regarding the contributors to Hansen's projects--could reasonably have been rejected by the jury in favor of the inference that he was attempting to avoid raising the suspicion of the Bank of Commerce.
 
 
 16
 We have recognized that valid consent to a customer's banking activities by a bank, its officers, or its board of directors, is a defense to a charge of bank fraud. United States v. Unruh, 855 F.2d 1363, 1367-70 (9th Cir.1987), cert. denied, 488 U.S. 974 (1988). However, such a defense is not complete, but is limited and evidentiary. Id. at 1368. The jury in this case had to decide whether the appellants' activities amounted to simple overdrafts that did not rise to the level of misapplication of bank funds, or a complicated scheme to defraud the banks involved. Id. at 1367-70; see also United States v. Stone, 954 F.2d 1187, 1192-93 (6th Cir.1992); United States v. McKinney, 822 F.2d 946, 948-49 (10th Cir.1987). In view of the ample evidence presented at trial regarding the size and duration of Hansen and Scoresby's "loan program," a rational jury could have found beyond a reasonable doubt that the appellants had a specific intent to defraud the banks involved.
 
 
 17
 II. Sufficiency of the Superseding Indictment
 
 
 18
 The appellants challenge the sufficiency of the superseding indictment on three grounds. They claim that the superseding indictment (1) failed to adequately charge an offense; (2) failed to adequately allege the elements of an offense; and (3) is void for multiplicity. The third claim was abandoned at oral argument. We review the sufficiency of an indictment de novo. United States v. Benny, 786 F.2d 1410, 1414 (9th Cir.), cert. denied, 479 U.S. 1017 (1986).
 
 
 19
 An indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend; and (2) enables him to plead double jeopardy in the case of future prosecutions for the same offense. Hamling v. United States, 418 U.S. 87, 117 (1974). According to Federal Rule of Criminal Procedure 7(c)(1), "[t]he indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." However, error in the citation of the charged offense or its omission shall not be grounds for reversal of the conviction if the error "did not mislead the defendant to the defendant's prejudice." Fed.R.Crim.P. 7(c)(3); United States v. Bonallo, 858 F.2d 1427, 1431 (9th Cir.1988). An indictment should be read as a whole, read to include facts necessarily implied, and construed according to common sense. United States v. Buckley, 689 F.2d 893, 899 (9th Cir.1982), cert. denied, 460 U.S. 1086 (1983).
 
 
 20
 The Appellants argue that the superseding indictment failed to allege an offense because, in detailing the scheme to defraud, the superseding indictment merely alleged conduct that is legal. This claim is meritless.
 
 
 21
 The superseding indictment charged appellants with a scheme to defraud certain federally-insured banks by "induc[ing] the financial institutions to extend credit on uncollected funds." (Superseding Indictment Sec. B, p 4). Issuing checks against insufficient funds is not in itself a crime. However, as discussed above, an intent to defraud may be inferred from the facts surrounding the scheme. United States v. Mason, 902 F.2d 1434, 1442 (9th Cir.1990).
 
 
 22
 The superseding indictment alleges 49 instances where checks, drawn on insufficient funds, were deposited in furtherance of a scheme to defraud five federally-insured banks. Such allegations, if proven true, would indicate a systematic pattern of check kiting that is illegal under 18 U.S.C. Sec. 1344(1). See e.g., United States v. Doherty, 969 F.2d 425 (7th Cir.), cert. denied, 113 S.Ct. 607 (1992) (bare check kiting scheme covered under 18 U.S.C. Sec. 1344(1)); United States v. Celesia, 945 F.2d 756, 758 (4th Cir.1991) (same). It is true that the superseding indictment did not precisely match each of those 49 checks with a preceding deposit that served falsely to inflate the Ideal Consultants account; nevertheless, the superseding indictment was sufficient to put Hansen and Scoresby on notice regarding the offense charged.
 
 
 23
 The appellants also contend that the superseding indictment failed to allege adequately the elements of an offense, and they cite numerous grammatical errors in the superseding indictment in support of this contention. However, the appellants cite no authority for their claim that an indictment that properly alleges jurisdiction must otherwise contain exact language and precise grammatical construction to be valid.
 
 
 24
 We have held that an indictment must be sufficient to put the defendant on notice of the crime charged so that the defendant may adequately prepare a defense. United States v. Bonallo, 858 F.2d 1427 (9th Cir.1988).[1] Although the grammatical structure of the superseding indictment might not have won the praise of an English professor or newspaper editor, it contained the essential facts constituting the offense charged. Fed.R.Crim.P. 7(c)(1). The superseding indictment therefore was sufficient to put Hansen and Scoresby on notice of the crime charged, and did not mislead the defendants to their prejudice.
 
 III. Evidentiary Rulings
 
 25
 Scoresby also argues that the district court erred in not striking from the record testimony by a government witness that was based upon hearsay. Laurel Barsalou, formerly a branch manager at First Security Bank, testified on direct examination that she had witnessed John Scoresby come into her branch and deposit checks drawn on various Ideal Consultants' checking accounts into Raymond Burns' account. Barsalou stated that Scoresby made these deposits two to three times a month during the period from the early spring through the summer of 1990. On cross-examination, Ms. Barsalou testified that she never actually received Ray Burns' deposits from John Scoresby, but that she knew that he made deposits because bank policy required that tellers receiving large deposits seek approval from her prior to clearing the deposited funds.
 
 
 26
 Upon further questioning by defense counsel, Ms. Barsalou admitted that her knowledge of who deposited the checks into the Burns' account was partially based on the fact that her operations officer told her that it was John Scoresby. The district court overruled defense counsel's hearsay objection to Barsalou's admission.
 
 
 27
 We review evidentiary rulings for an abuse of discretion and will not reverse the district court absent some prejudice to the defendant. McGonigle v. Combs, 968 F.2d 810, 818 n. 6 (9th Cir.), cert. dismissed, 113 S.Ct. 399 (1992). Errors made by the district court are considered harmless if, in the absence of the improperly admitted hearsay, there is sufficient evidence to convict the defendant of the crime charged. United States v. Magana-Olvera, 917 F.2d 401, 409 (9th Cir.1990). As we hold that Scoresby was not prejudiced by the district court's ruling, we need not reach the question whether the district court abused its discretion by not striking Ms. Barsalou's hearsay testimony from the record.
 
 
 28
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In Bonallo, the indictment alleged that the defendant, a bank employee, devised a scheme to obtain money from a federally-insured bank's automatic teller machines. We held that the indictment was sufficient to charge the defendant with bank fraud, despite false pretenses language in the indictment and the failure of the indictment to specify whether the charge was based on a scheme to defraud or a scheme to obtain money by false pretenses. 858 F.2d at 1430-31. We noted that "the indictment sets forth the elements of the illegal scheme, and the times and places where the withdrawals occurred. [The defendant] therefore knew of the conduct he was being accused of, and could adequately prepare a defense." Id. at 1431