**UNITED STATES of America**

v.

**CHAN CHUN–YIN, a/k/a Ah Wai, Appellant.**

**No. 90–3185.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 1991.

Decided March 13, 1992.

441

Nicholas G. Karambelas, with whom Steven R. Kiersh, Washington, D.C. (appointed by this court) was on the brief, for appellant.

Caroline Marnock Carey, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, and Roy W. McLeese III, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MIKVA, Chief Judge, and WALD and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Appellant Chan Chun–Yin was convicted after a jury trial of selling more than one kilogram of heroin in Hong Kong with the knowledge that it would be imported into the United States. Chan challenges this conviction on two grounds: First, he argues that there was insufficient evidence for the jury to find that he knew the heroin was to be imported into the United States; second, he asserts that the district court committed plain error in instructing the jury on the *scienter* element of the offense. We find no merit in either of these contentions and affirm.

## I. Background

From the summer of 1986 through the spring of 1988, the Federal Bureau of Investigation conducted operations aimed at netting a ring of Chinese drug traffickers importing heroin into the United States. As part of the investigation, Special Agent Frederick Yau posed as an American drug importer from San Francisco. In the summer of 1986, Agent Yau met with two suspected drug traffickers in Washington, D.C. Agent Yau told them that he was interested in importing heroin into the United States. After a series of meetings, the two men introduced him by telephone to Siu Chong and Gai Pak of Hong Kong. Agent Yau informed Siu and Gai of his assumed background, inquired into the availability of heroin in Hong Kong, and agreed to meet with them there in order to purchase the drug.

Agent Yau traveled to Hong Kong in November 1987, where he met with Siu and Gai. The agent testified that the two men introduced him to appellant Chan Chun–Yin at a Hong Kong restaurant, and that he told Chan that he was from the United States. According to Agent Yau, Chan informed him the next day that he had friends in the Los Angeles area who had heroin, and he asked the agent whether he could "help [Chan] out by taking that off their hands." Trial Transcript, March 21, 1990 ("3/21/90 Tr.") at 13. He suggested that there was no need for Agent Yau to return to Hong Kong as Chan could help him obtain heroin in the United States.

Nevertheless, Agent Yau returned to Hong Kong in April 1988 and again met with Chan. During the evening of April 13, Chan told the agent that he could obtain some heroin for him the next day. On April 14, Chan met Agent Yau at his hotel room to consummate the sale. In accordance with a prearranged plan, the agent gave Chan the key to a rental car. Chan informed Agent Yau that he would drive the car away, put the heroin in it, and park it at a location to be disclosed at a future time. As planned, Chan left and later returned with the key. After Chan told him the location of the car, Agent Yau directed another officer to pick it up. The officer found 8.5 kilograms of 95% pure water soluble heroin inside the car.

Agent Yau arrested Chan Chun–Yin, and he was brought to the United States for trial on the charge that he had violated 21 U.S.C. § 959 (1988) which, *inter alia,* makes it a crime for anyone to manufacture or distribute a controlled substance with the intent that it be brought into the United States, or "knowing that such substance will be unlawfully imported into the United States." As the Government limits its claim to actual knowledge, Chan's intentions are not at issue in this case.

At Chan's trial, the Government presented translations of taped conversations between Agent Yau and Chan in support of its contention that the latter knew the destination of the heroin. None of these conversations contained an explicit reference to the United States. The two men spoke of "that side" and "this side," and of "there" and "here." For example:

MR. CHAN: ... If you buy it on that side, what's the buying price?

    \*    \*    \*    \*    \*    \*

MR. YAU: If I buy it here, of course, it's cheaper, right?

    \*    \*    \*    \*    \*    \*

MR. YAU: Well ... is your, your friend on that side now?

MR. CHAN: No on this side.

    \*    \*    \*    \*    \*    \*

MR. YAU: ... You tell me you had a friend on that side, meaning my side.

    \*    \*    \*    \*    \*    \*

MR. CHAN: ... he had delivered some stuff to that side. His group of men were arrested, but he himself is all right.

3/21/90 Tr. at 37–38; 69. Agent Yau testified, however, that when he and Chan used the phrase "that side," they were referring to the United States.

The Government also introduced the expert testimony of Metropolitan Police Department Detective Dwight Rawls, an eighteen-year veteran with expertise in the field of international drug trafficking and street usage. Detective Rawls testified

that sellers, such as Chan, attempt to learn about the background of their buyers in order to "facilitate the delivery." He also testified that the United States is the largest market in the world for this quality of water soluble heroin.

Following the close of evidence, the district court instructed the jury, without objection, that in order to establish a violation of 21 U.S.C. § 959, it must find beyond a reasonable doubt that Chan "either intended that the heroin be unlawfully brought into the United States or ... knew *or had cause to know* that the heroin would be unlawfully brought into the United States." Trial Transcript, March 22, 1990 ("3/22/90 Tr.") at 51–52 (emphasis added). The jury found Chan guilty, and he was sentenced to 210 months in prison. This appeal followed.

## II. DISCUSSION

### A.

Chan first argues that there was insufficient evidence for the jury to have found that he knew the heroin he sold Agent Yau was to be imported into the United States, as required by section 959. That section reads, in pertinent part, as follows:

> It shall be unlawful for any person to manufacture or distribute a controlled substance ... *knowing* that such substance will be unlawfully imported into the United States[.]

21 U.S.C. § 959(a) (emphasis added).

■ By its terms, this provision requires proof of actual, not constructive, knowledge. It is undisputed that such proof may take the form of circumstantial as well as direct evidence. *See, e.g., United States v. Lam Kwong–Wah*, 924 F.2d 298, 302–03 (D.C.Cir.1991) (upholding jury finding of intent to distribute heroin based upon circumstantial evidence); *United States v. Bollinger*, 796 F.2d 1394, 1405 (11th Cir.1986) (upholding jury finding of knowledge of a conspiracy to import drugs into United States in violation of 21 U.S.C. § 963), *modified on other grounds*, 837 F.2d 436, *cert. denied sub nom. De La*

*Fuente v. United States*, 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988).

■ The dispute in this case centers on whether the circumstantial evidence adduced by the Government against Chan was sufficient to prove that he had known that the heroin would be imported into this country. In assessing the substantiality of this evidence, we begin by recognizing that "[t]he standard for overturning a guilty verdict on the grounds of insufficiency of evidence is ... a demanding one." *Lam Kwong–Wah*, 924 F.2d at 302. Accordingly, we will not reverse a conviction in such a case unless, reviewing the evidence in the light most favorable to the Government, a reasonable jury "could not have found guilt beyond a reasonable doubt." *Id.*

Chan contends that the Government did not adduce any circumstantial evidence sufficient to show that he was "aware of any facts or circumstances from which he would know that the heroin [would] be imported into the United States." Brief for Appellant at 14. We disagree. The Government introduced substantial evidence that Chan knew that the heroin was to be imported into the United States. Agent Yau testified that Chan knew he was from the United States. They talked generally about the price of heroin in America and about the possibility of conducting future sales in this country. Furthermore, Agent Yau expressly told Gai and Siu that he was from San Francisco and was interested in importing heroin into this country. These two middlemen introduced Agent Yau to Chan. Chan subsequently suggested that Agent Yau might purchase heroin from a friend in Los Angeles.

These facts, coupled with the relationship between Chan and the two middlemen, support the inference that Chan knew that Agent Yau was from San Francisco and that he was interested in importing drugs into the United States. A reasonable jury could certainly conclude from this evidence that Chan knew that Agent Yau would be importing the heroin into the United States.

### B.

We turn now to Chan's second contention; namely, that the trial court committed reversible error in instructing the jury on the matter of knowledge. The Government agrees with Chan that the district court erred in instructing the jurors that they could convict him if they found he "knew *or had cause to know*" that the heroin would be imported into the United States. 3/22/90 Tr. at 52 (emphasis added). Chan, in turn, acknowledges that as he failed to object to the jury charge as required by Fed.R.Crim.Pro. 30, our review may only be for "plain error." Fed.R.Crim.Pro. 52(b). "The Courts of Appeals long have recognized that the power granted them by Rule 52(b) is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982). This is not such a case.

In deciding whether jury instructions are plainly erroneous, we consider the evidence adduced at trial, the arguments of counsel, and the content of the entire jury instruction. *See United States v. Whoie,* 925 F.2d 1481, 1485 (D.C.Cir.1991). Here, as we have noted, the Government proffered substantial evidence of Chan's actual knowledge. In addition, the Government's closing argument focused on actual knowledge. *See* 3/22/90 Tr. at 15 (he "knew"); *id.* at 16 (he "had knowledge"); *id.* at 17 ("he certainly knew about it"); *id.* at 35 ("the crux of the defense is knowledge");

*but see id.* at 14 (he "knew or had cause to know").

Similarly, Chan's closing argument referred exclusively to actual knowledge; indeed, the crux of his defense was his lack of it. *See, e.g., id.* at 21 ("We are here to talk one issue and one issue only: Did Chan Chun Yin know that this heroin was coming to the United States?"). Finally, while the district court erred in instructing the jury, it also mitigated the effects of its error by reading the indictment to the jury which contained the proper actual knowledge requirement and by allowing them to take a copy of it to the jury room to use during deliberations. *See id.* at 45. Under these circumstances, we conclude that there has been no miscarriage of justice.

### III. Conclusion

We find the circumstantial evidence sufficient to enable a jury to conclude beyond a reasonable doubt that Chan had known that the heroin was to be imported into the United States. As the district court's flawed instruction was not plain error, the conviction is

*Affirmed.*