**UNITED STATES of America, Appellee,**

v.

**Richard Anthony MILLER, Appellant.**

**No. 93–3113.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 12, 1995.

Decided Dec. 12, 1995.

hear such petition or complaint solely on the

record made before the Secretary.").

**1354**

Allen E. Burns, Assistant Federal Public Defender, argued the cause, for appellant. A.J. Kramer, Federal Public Defender, was on the brief. Neil H. Jaffee, Assistant Federal Public Defender, Washington, DC, entered an appearance.

Lisa A. Hertzer, Assistant United States Attorney, argued the cause, for appellee. Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., Sherri L. Evans and Sima F. Sarrafan, Assistant United States Attorneys, were on the brief. Thomas C. Black, Assistant United States Attorney, Washington, DC, entered an appearance.

Before: SILBERMAN, SENTELLE and KAREN LeCRAFT HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

Separate concurring opinion filed by Circuit Judge SENTELLE.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Richard Anthony Miller appeals his convictions on one count of bank fraud and one count of access device fraud. Finding no reversible error, we affirm both convictions.

■ On appeal from a conviction, we must view the evidence in the light most favorable to the government, allowing it the benefit of all reasonable inferences that may be drawn from the evidence and permitting the jury to determine the weight and credibility of the evidence. *United States v. Sobin,* 56 F.3d 1423, 1425 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 348, 133 L.Ed.2d 244 (1995); *United States v. Butler,* 924 F.2d 1124, 1126 (D.C.Cir.), *cert. denied,* 502 U.S. 871, 112 S.Ct. 205, 116 L.Ed.2d 164 (1991). So viewed the evidence reveals the following facts.

Miller was employed as an aide to District of Columbia City Council member Wilhelmina Rolark from February 1991 until he resigned on February 21, 1992. During that time, he occasionally cashed checks for Rolark, drawn on her account at Riggs National Bank (Riggs) and made out to Miller. He last did so in December 1991.

In April 1991 Rolark acquired a new automated teller machine (ATM) card from Riggs, to replace one she had lost, and selected a new four-digit personal identification number (PIN) to access her account through the card. Her recollection at trial was uncertain but she believed that she designated the last four digits of her home or car telephone number as her new PIN and that she stored the new card in one of three locations at her home and office where she customarily kept important personal items. She was certain that she never used the card herself or authorized Miller to do so.

In March 1992, Rolark noticed a number of electronic withdrawals listed on her last two bank statements and notified Riggs. Riggs conducted an investigation and discovered that 41 electronic withdrawals had been made between January 26 and March 2, 1992, totaling $11,100. During the investigation, Rolark met with Lyle J. Theisen, a Riggs security employee, and was shown photographs taken by security cameras at

the locations and times of several withdrawals. She identified the man in the photographs as Miller.[1] As a consequence, he was arrested and indicted on one count each of bank fraud in violation of 18 U.S.C. § 1344[2] and of access device fraud in violation of 18 U.S.C. § 1029(a)(2).[3] He was convicted by a jury of both counts and was sentenced to six months' imprisonment, suspended, and three years' probation. He appeals his convictions on several grounds.

■ First, Miller argues his bank fraud conviction should be reversed because there was insufficient evidence that he committed each element of the offense as it was charged to the jury. Section 1344 makes it unlawful to participate in, alternatively, (1) "a scheme to defraud a financial institution," 18 U.S.C. § 1344(1), or (2) "a scheme to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises," id. § 1344(2). The district court, however, initially charged the jury only on the elements of a section 1344(2) violation, instructing that the government bore the burden of proving "that the defendant Miller knowingly executed a scheme to obtain the money owned by or under control of the financial institution by means of false or fraudulent pretenses, representations, or promises." Jury Instruction Transcript (Tr. 2) at 41. Miller contends there was no evidence he ever made any "misrepresentation" as required under the district court's charge. We disagree.

Each time Miller inserted Rolark's card into an ATM and entered her personal four-digit code, he represented to Riggs that he had authority to withdraw funds from Rolark's account, just as he had previously represented each time he presented a bank teller with one of her checks. Miller argues that making unauthorized electronic withdrawals is akin to check-kiting which other circuits have found cannot, by itself, constitute mail fraud. See, e.g., United States v. Doherty, 969 F.2d 425, 427–28 (7th Cir.), cert. denied, 506 U.S. 1002, 113 S.Ct. 607, 121 L.Ed.2d 542 (1992); United States v. Medeles, 916 F.2d 195 (5th Cir.1990); United States v. Bonnett, 877 F.2d 1450, 1456–57 (10th Cir.1989). We find the analogy inapt. The rationale underlying those courts' holdings is that "a check does not 'make any representation as to the state of [an account holder's] bank balance,' and hence cannot be characterized as true or false." Doherty, 969 F.2d at 427 (quoting Williams v. United States, 458 U.S. 279, 284–85, 102 S.Ct. 3088, 3091–92, 73 L.Ed.2d 767 (1982)). Miller likewise made no representation regarding the balance in Rolark's account when he requested the various electronic withdrawals.[4] What he did do, however, was to enter Rolark's PIN, which acts as a sort of electronic signature authorizing an ATM to release available funds. That he did so without Rolark's knowledge or permission is tantamount to cashing a check with a forged signature—conduct we have expressly held violates section 1344(2). See United States v. Sayan, 968 F.2d 55, 62 (D.C.Cir.1992) (forged endorsements on checks "constitute affirmative

1. Riggs maintains a hidden camera at each ATM location to photograph transactions every three to five seconds.

2. This section provides:
   Whoever knowingly executes, or attempts to execute, a scheme or artifice—
   (1) to defraud a financial institution; or
   (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
   shall be fined not than $1,000,000 or imprisoned not more than 30 years, or both.
   18 U.S.C. § 1344.

3. This section provides:

(a) Whoever—

   (2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period;

   shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.
   18 U.S.C. § 1029(a)(2).

4. In fact, the ATM would not have dispensed more money than was in the account. See Transcript of Testimony (Tr. 1) at 33–36.

misrepresentations which support a charge of false pretenses"). Nor do we find persuasive Miller's reliance on *United States v. Briggs*, 939 F.2d 222, 226–27 (5th Cir.1991), in which the Fifth Circuit found that a defendant who ordered unauthorized wire transfers from her employers' bank accounts had not violated section 1344(2) because "[s]o far as the sparse record discloses, Briggs made no explicit false representations, statements, or promises in carrying out her scheme." 939 F.2d at 226. The *Briggs* court was careful to note that "precisely how [the defendant] effected these transfers is unclear" and further observed that "where the defendant falsely represents that she is acting under her employer's authority, we would have little trouble concluding that such conduct is squarely prohibited by the statute." *Id.* at 227. Here, of course, we know exactly how Miller accomplished the ATM withdrawals—by using Rolark's PIN to communicate his supposed authority to do so—and we have no trouble concluding this conduct falls within the statute's proscription.

Miller next challenges three aspects of the district court's jury instructions, none of which constitutes reversible error.

■ Miller first asserts the district judge erred by telling the jury that "[t]he evidence in the case did not establish that any person was actually defrauded but only that the accused acted with intent to defraud," Tr. 2 at 42, thereby improperly relieving the government of its burden of proving the element of intent to defraud. Because Miller failed to object to the instruction at trial we review it for plain error and reverse only if it was prejudicial, that is if "a miscarriage of justice would otherwise result." *United States v. Boyd*, 54 F.3d 868, 872 (D.C.Cir.1995) (quoting *United States v. Olano*, 507 U.S. 725, ——, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993)). While the language Miller cites may have improperly suggested intent had been established, we do not think it sufficiently prejudiced Miller to constitute plain error. Elsewhere in the instructions, the court made it clear to the jurors that "intent to defraud" was one of the necessary elements to be proved and that the government bore the burden of affirmatively proving each ele-

ment of the offense beyond a reasonable doubt. *See* Tr. 2 at 40–41. Reading the instructions as a whole, therefore, we do not believe the court's isolated misstatement was plain error. *Cf. United States v. Whoie*, 925 F.2d 1481, 1485–86 (D.C.Cir.1991) (no plain error in failure to instruct jury that government bore burden of disproving inducement to overcome entrapment defense where instructions, considered as a whole, made clear that government bore burden of proving defendant's guilt beyond reasonable doubt).

Miller next asserts the court erred in charging the jury that money obtained in violation of the bank fraud statute can be "owned by or under control of the financial institution," Tr. 2 at 41. Only subsection (2), he argues, permits conviction for obtaining money merely under the bank's control, while subsection (1) requires that it actually be owned by the bank. In light of our conclusion that the evidence supported Miller's conviction under subsection (2), and Miller's own insistence that his bank fraud conviction can be upheld, if at all, only under that subsection, we conclude this argument has lost whatever weight it may otherwise have had.

For a similar reason, we reject Miller's claim that the district court erred in charging that "false pretenses" can support a bank fraud conviction. Subsection (2) of the bank fraud statute, under which Miller must be assumed to have been convicted, expressly criminalizes schemes to obtain bank funds "by means of false or fraudulent pretenses." Thus, there was no error in the challenged instruction.

■ Finally, Miller argues that the district court erred in admitting, over his objections, Theisen's testimony to two "legal conclusions," namely that Miller's withdrawals "affected interstate commerce" and that they constituted bank fraud. *See Christiansen v. National Savs. & Trust Co.*, 683 F.2d 520, 529 (D.C.Cir.1982) ("The duty to issue [legal] conclusions devolve [sic] on the courts and lay legal conclusions are inadmissible in evidence.") (citations omitted). To the extent that the former isolated statement may have been improper, it was harmless given the witness's lengthy and uncontroverted testi-

mony regarding the interstate scope of ATM transactions. *See United States v. Newman,* 49 F.3d 1, 7 (1st Cir.1995); *Hygh v. Jacobs,* 961 F.2d 359, 364–65 (2d Cir.1992); *Torres v. County of Oakland,* 758 F.2d 147, 151 (6th Cir.1985).[5] As for the latter testimony, it was not given as Theisen's legal opinion but only to explain factually why Riggs conducted its investigation and credited $11,000 to Rolark's account, to wit: "because of ... what was determined as bank fraud through the unauthorized use of her ATM card." Tr. 1 at 74.

For the preceding reasons, the appellant's convictions are

*Affirmed.*

SENTELLE, Circuit Judge, concurring in the result:

I cannot join the majority in its affirmance of Miller's conviction on the basis of 18 U.S.C. § 1344(2). That subsection, as I read it, requires elementally the making of a false or fraudulent pretense, representation or promise. The theory in this case is that Miller, by entering Rolark's PIN into the ATM, falsely represented that he had the authority to draw funds from Rolark's account. This theory seems to assume that an act consistent with a supposed set of facts is representing that the supposed set of facts is indeed true; because it is not true, the "implied representation" is a false one. I see no reason why this same theory would not cover such a wide range of imaginable conduct as to criminalize under this and other false representation statutes conduct far beyond what a legislative body, or a citizen contemplating the statute, could conceivably expect these statutes to encompass. For example, a person who puts a key in a lock could be said to impliedly represent that he has the authority to open that lock. If he lacks that authority, he becomes liable not only for the consequences of his illegal entry but also for having made a false representation. As with illegal entry, the same for theft. So, too, in assaults, the person committing the unper-

mitted touching could be said to be impliedly and falsely representing himself to have consent to touch the victim. None of these things seems to me to be a representation, let alone a criminally false one.

I do not read *United States v. Sayan,* 968 F.2d 55, 62 (D.C.Cir.1992), relied upon by the majority, to compel the contrary result. The discussion of the forgeries in the *Sayan* case involved the sufficiency of the government's evidence to support a conviction of bank larceny in violation of 18 U.S.C. § 2113(b). The gist of the portion quoted by the majority, in context, seems to me to be that the forgeries together with the other check writing behavior committed by the defendant in *Sayan* together constituted sufficient evidence to support a conclusion that she had unlawfully "tak[en] and carr[ied] away with the intent to steal or purloin" bank funds. I do not read *Sayan* as coming to grips with the question even of whether a forged signature standing alone is sufficient to make out a misrepresentation in violation of § 1344(2), let alone to require that other conduct even farther removed from the making of a representation falls within that statute.

Unlike the majority, I do find persuasive Miller's reliance on *United States v. Briggs,* 939 F.2d 222, 226–27 (5th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 1016, 122 L.Ed.2d 163 (1993). In that case, as in this one, the government's evidence would have supported a conclusion that the defendant ordered the transfer of funds by a bank—in that case by wire transfer order, in this case by ATM operations. The Fifth Circuit held, I believe rightly, that "the bare act of instructing a bank to transfer funds is not a factual representation...." Therefore, that circuit held "it cannot be a *mis*representation, a *false* representation, or *any kind* of representation." *Id.* at 226 (emphasis in the original). I do not see how ordering by ATM machine is any more a representation than ordering by wire. I would therefore hold consistently with the Fifth Circuit that evi-

---

5. After he explained at length how ATM transactions require transmission of information to a "central switching station which is located in the midwestern part of the United States," Theisen

responded "yes" to the question "Now you have indicated that when the ATM transaction goes through this process that the transaction itself affects interstate commerce?" Tr. 1 at 35, 39.

dence of such an order does not make out a violation of § 1344(2).

I would nonetheless join my colleagues in upholding the conviction of Miller. Because I would not convict under § 1344(2), unlike my colleagues, I would reach the question of the sufficiency of the evidence under 18 U.S.C. § 1344(1) and hold the evidence to be sufficient. To convict appellant under this subsection, the government was required to prove "a recognizable scheme formed with the intent to defraud a financial institution." *United States v. LeDonne,* 21 F.3d 1418, 1425 (7th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 584, 130 L.Ed.2d 498 (1995). I see nothing in the statute or in authoritative interpretations of it requiring that the scheme defrauds the institution of funds it owns as opposed to funds in which its interest is as a trustee or bailee. That the fraud is directed at a particular account, as opposed to the general funds and credits of the bank, should not in my view affect the sufficiency of the evidence.

Thus, I would affirm the conviction, but on the basis of section 1344(1) rather than 1344(2).